## SKINNER v. THE STATE.

1. The mere use of opprobrious, insulting or abusive language, without more, will not justify the pointing or aiming of a gun by the person to whom such language is addressed at the person using the same. Provocation of this kind does not stand upon a like footing of reason and justice with self-defense, or defense of habitation, person or property.

2. There being no complaint that the court did not properly in-

struct the jury as to the law of reasonable doubt, the failure to give in charge the last two sentences of section 3749 of the code, there being no request for such instruction, is not cause for a new trial; nor, in the absence of a request, is it cause for a new trial that the court failed to charge that the witness or witnesses having the best opportunity of knowing the facts, and the least inducement to swear falsely, are to be believed in preference to those not so situated; the presumption being that the court in its charge gave to the jury appropriate general instructions touching the credibility of witnesses.

3. The evidence warranted the verdict, and that portion of the charge to which it is alleged the verdict is contrary, fairly submitted the only meritorious defense which could have been available to the accused if found true by the jury.

February 7, 1896. By two Justices.

Indictment for pointing gun, etc. Before Judge Janes. Douglas superior court. November term, 1895.

The prosecutor, P. R. Bingham, testified: Monday morning about 8 o'clock, I left my house to go to Eason's to shave; did not have a full set of tools to shave with. As I passed prisoner's house, he opened his door, with double-barreled shotgun in his hand and threw it on me; pointed it at me with both barrels cocked. Was in the big road; did nothing nor said anything to cause him to do it. He advanced on me as far as I would let him. Drew my razor and kept him off with it. Did not call him a son of a bitch before he aimed the gun at me; did call him that, and he cursed me, while the difficulty was going on.

For defendant Noah Camp testified: Went to Skinner's early that morning; he had just got up. While we were sitting there, Bingham came up the road from his house and called out to his brother to bring his razor. Skinner said he believed he would ask him if he had his razor, and walked through the house to the front door. I walked around the house to the front. Skinner said, "Pyrne, did you mean what you said last night?" referring to difficulty the night before. Bingham replied, "Yes, you God damned son of a bitch, I did"; and made towards Skinner with open razor in

his hand, into Skinner's yard, out of road. Skinner stepped back into his house, picked up his gun, pointed it at him and told him to stop. They got together and scuffled, and gun went off. They scuffled until I got the gun and handed it to Mat Eason, and picked up razor. Bingham cut at Skinner with the razor before he aimed the gun at him. No other person than Skinner, Bingham and myself was present at the beginning of the difficulty.

Mat Eason testified that he lived 250 yards from Skinner, heard the fuss and came to Skinner's; and that Skinner pointed gun at Bingham. Bingham's brother testified that when he came to Skinner's, his brother and Skinner were fighting. His brother told him to pick up his razor which was lying on the ground. Camp picked it up.

After verdict of guilty, defendant moved for a new trial, which was denied, and he excepted. The grounds of the motion are, that the verdict is contrary to law, evidence, and a part of the charge of the court. Also, that the court failed to charge, that in civil cases the preponderance of testimony is considered sufficient to produce mental conviction; in criminal cases a greater strength of mental conviction is held necessary to justify a verdict of guilty; and further failed to charge, that the witness or witnesses who have the best opportunity of knowing the facts, and the least inducement to swear falsely, are to be believed in preference to those not so situated.

Also, that the court charged the jury, that no words used by the prosecutor at the beginning of the difficulty, however opprobrious, would justify the prisoner in pointing a gun at the prosecutor, and charged the law applicable to murder trials, as to words, threats, etc.; the error consisting in this: The offense charged in the indictment was a misdemeanor, a species of assault unmixed with battery, and the charge was inapplicable and erroneous; the words spoken should have been left to the jury to be considered and weighed

in the prisoner's favor, as in similar cases under the penal laws.

*B. G. Griggs,* for plaintiff in error.

*W. T. Roberts, solicitor-general,* contra.

ATKINSON, Justice.

The official report states the facts.

1. The defendant was indicted under the provisions of section 343 of the Penal Code, for the offense of pointing a gun at another.    He undertook to justify by the introduction of evidence showing the use by the prosecutor to him, of him and in his presence, of opprobrious words; and the trial judge instructed the jury that the use of such language, however opprobrious, could not justify or excuse the pointing of a gun at another.

We know of no case within the provisions of our law in which the commission of a criminal offense can be justified by the proof of opprobrious words, except those of assault, and battery.    By statute in this State it was early provided that in cases of simple assault or assault and battery, opprobrious words might be given in evidence to be considered by the jury, and upon which they might find a person indicted justifiable, provided the battery inflicted were not disproportioned to the provocation given.    This right to plead words in justification has never been extended, and, by the express language of the statute authorizing their introduction in evidence, is limited to cases of assault and battery. While previous to the passage of the act embodied in section 343 of the Penal Code (to which we will presently refer) the pointing of a gun at another might, under some circumstances, have been classed as an assault, and justified by the use of opprobrious words, we think that in the passage of the act last referred to, it was the legislative purpose to create a new and distinct offense altogether, differing from the offense of assault, or assault and battery; for by that section it is provided that "Any person who shall inten-

tionally point or aim a gun or pistol, whether loaded or unloaded, at another, not in a sham battle by the military, and not in self-defense, or in defense of habitation, property or person, or other instances standing upon like footing of reason and justice, shall be guilty of a misdemeanor." There is no indication here of the legislative purpose to extend the provisions of the law relating to cases of assault and battery to those offenses which may be committed in violation of the section of the code quoted. The only defenses recognized there are, the pointing of a gun or pistol at another in a sham battle of the military, or the pointing of a gun or pistol at another in self-defense, or in defense of habitation, property or person, "or other instances standing upon like footing of reason and justice." It is insisted that the words last quoted justified the introduction of evidence showing opprobrious words as an excuse for the offense. The language employed in this act, it will be noted, is the same language employed in the law of this State where it deals with the offense of homicide. A man may lawfully take the life of another in self-defense, or in defense of habitation, property, or person, and may likewise take the life of another in other instances standing upon a like footing of reason and justice; but it has been repeatedly held that under no circumstances could a mere use of words justify the commission of homicide, nor would their use amount to another "instance standing upon like footing of reason and justice." Since the legislature has seen proper to open up to the defendant, indicted under the provisions of section 343 of the code, only such defenses as he could have availed himself of in case he had been indicted for homicide, he can excuse himself in the one case only by proof of such facts as would have excused him in the other; and since, as we have seen, mere words cannot excuse the commission of a homicide, it would follow that they cannot excuse the commission of an offense provided against by section 343 of the Penal Code.

2. Complaint was made that the court failed to give in charge the last two sentences of section 986 of the Penal Code, which reads as follows:    "In all civil cases the preponderance of testimony is considered sufficient to produce mental conviction.    In criminal cases a greater strength of mental conviction is held necessary to justify a verdict of guilty."    There was no request for such an instruction, and there is no complaint that the trial judge did not charge fully the law of reasonable doubts; and having fully charged upon that subject, if the defendant desired him to give specifically in charge that portion of the section of the code above quoted, he should have specially so requested.    Nor was it reversible error for the court to fail to charge "that a witness or witnesses who have the best opportunity of knowing the facts, and the least inducement to swear falsely, are to be believed in preference to those not so situated," the presumption being that the court in its charge gave to the jury appropriate general instructions touching the credibility of witnesses.

3. Complaint was further made that the jury found contrary to the following charge of the court: that "if the prosecutor was advancing upon the prisoner with a razor, intending to do the prisoner a violent injury, and the prisoner aimed or pointed the gun at him to deter him, then he would not be guilty."    This charge embodies the only substantial defense which the evidence presents in favor of the accused.    He got the benefit of the theory upon which this instruction was founded.    The jury, however, did not find that theory supported by the evidence; and looking through the evidence in the case, we are fully persuaded that the jury reached a correct conclusion.

*Judgment affirmed*